Filed 11/30/20; certified for publication 12/29/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANAHIT SHIRVANYAN, | B296593, B297419 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC633224) |
| v. | |
| LOS ANGELES COMMUNITY COLLEGE DISTRICT, | |
| Defendant and Appellant. | |

APPEALS from the judgment and an order of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge. Reversed with directions.

Carlson & Messer, Charles R. Messer; Greines, Martin, Stein & Richland and Robert A. Olson for Defendant and Appellant.

Shegerian & Associates, Carney R. Shegerian and Jill McDonell for Plaintiff and Respondent.

Defendant Los Angeles Community College District (the District) appeals from a judgment following a jury verdict in favor of plaintiff Anahit Shirvanyan, a former employee of the District, on her Fair Employment and Housing Act (FEHA) claims against it. These claims were based on the District's alleged failure to provide reasonable accommodations for and/or engage in an interactive process to identify reasonable accommodations for two injuries, each of which was sufficient to render Shirvanyan disabled for the purposes of FEHA. Shirvanyan offered evidence regarding the District's response to both injuries—a wrist condition that began sometime in 2014, and a shoulder injury that occurred in December 2015—but she did not, either in her complaint or the evidence she presented, differentiate between them as bases for liability.

The District argues that a necessary element of a FEHA interactive process claim under Government Code[1] section 12940, subdivision (n) is the availability of a reasonable accommodation at the time an interactive process should have taken place, such that engaging in the process would not have been futile. We agree with the District that a section 12940, subdivision (n) plaintiff must prove an available reasonable accommodation.

We further conclude that the evidence presented is sufficient to establish only that a reasonable accommodation of Shirvanyan's *wrist* injury, not her shoulder injury, was available. The jury did not indicate whether it relied on the District's response to one or both of these disabilities in reaching its verdict, and the record does not permit us to make such a

---

[1] Unless otherwise indicated, all further unspecified statutory references are to the Government Code.

determination.  We therefore reverse with instructions that the trial court conduct a new trial on Shirvanyan's failure to accommodate and interactive process claims based solely on the District's handling of Shirvanyan's wrist injury.  We further conclude, in response to the District's second primary argument on appeal, that the Workers' Compensation Act (Lab. Code, § 3200 et seq.) (the WCA) does not bar such claims, as they seek recovery for a harm that is distinct from the harms for which the Workers' Compensation Act provides a remedy.

The District also appeals from the order granting Shirvanyan attorney fees, which we also reverse.  To the extent Shirvanyan prevails on the limited retrial set forth below, the court must reassess whether and to what extent she is entitled to attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *FEHA Concepts of Reasonable Accommodation and the Interactive Process*

To assist in understanding the factual and procedural background of this matter, we provide an initial overview of some of the FEHA concepts involved in the litigation below.  FEHA identifies several "unlawful employment practice[s]."  (§ 12940.)  Through these definitions, FEHA seeks to assure "those employees with a disability who can perform the essential duties of the employment position with reasonable accommodation" have the opportunity to do so and are not discriminated against based on their disability.  (*Green v. State of California* (2007) 42 Cal.4th 254, 264 (*Green*).)  A "reasonable accommodation" is " ' a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job

3

held or desired.' " (*Furtado v. State Personnel Bd.* (2013) 212 Cal.App.4th 729, 745 (italics omitted), quoting *Nadaf–Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 974 *(Nadaf–Rahrov)*.) A reasonable accommodation may include "[j]ob restructuring, part-time or modified work schedules, [or] reassignment to a vacant position." (§ 12926, subd. (p)(2).) "A finite leave of absence [also] may be a reasonable accommodation to allow an employee time to recover." (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 377–378 (*Nealy*).)

FEHA imposes an "affirmative duty" (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 598, quoting Cal. Code Regs., tit. 2, § 11068, subd. (a)) on employers "to make [a] reasonable accommodation for the known disability of an employee unless doing so would produce undue hardship to the employer's operation." (*Nealy, supra,* 234 Cal.App.4th at p. 373, citing § 12940, subd. (m).) Because the normal course of an employee's job may not make her aware of all available and effective reasonable accommodations, FEHA also requires that "in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition," an employer "engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any." (§ 12940, subd. (n).) An employer's failure to make a reasonable accommodation for an employee with a known disability— regardless of whether an employer has engaged in the interactive process or not (see *Nadaf-Rahrov, supra,* 166 Cal.App.4th at p. 984)—is unlawful (§ 12940, subd. (m)(1)), and the disabled employee may sue to recover harm suffered as a result. An employer's failure to engage in the interactive process that causes

4

harm to a disabled employee or former employee is also independently actionable. (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 971.) For the purposes of a FEHA claim, the cause of an employee's disability is irrelevant; the focus is on the employer's efforts to reasonably accommodate the disability, regardless of its cause.

We discuss these concepts in greater detail in our analysis below.

**B.** *Factual Background*[2]

**1.** *Shirvanyan's employment at the child development center*

The Child Development Center (the center) at Los Angeles Valley College, a part of the District, employed Shirvanyan for approximately eight years, beginning in 2007. The District has three classifications for its employees—classified, unclassified, and academic. At the center, unclassified assistants may be assigned to roles in the kitchen, yard, or classroom. Shirvanyan was a level three unclassified assistant employee assigned to the kitchen. Her personnel record lists her job title as "Kitchen

_____

[2] We review sufficiency of the evidence issues raised on appeal for substantial evidence. (See *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571 (*Western States Petroleum*) ["when a [finding] is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the [finding]"].) As such, we must consider the evidence in the light most favorable to the challenged verdict, and resolve all conflicts of evidence in Shirvanyan's favor. (See *ibid.*)

Coordinator," and in her complaint identifies her position as "kitchen worker." When employed at the center, Shirvanyan was the only unclassified assistant assigned exclusively to the kitchen.

While working at the center, Shirvanyan prepared breakfast and lunch (e.g., washed and cut fruit, opened large heavy cans, poured cereal), brought meals in large bowls and milk/juice to classrooms using a large cart, retrieved and cleaned dishes, washed five-pound pots, did laundry, and cleaned the kitchen. Shirvanyan's "essential job functions" included "repetitive use of her hands to cut foods, load[ing] and unload[ing] the dishwasher, and hand wash[ing] large and heavy pots and pans" and required "prolonged standing, repetitive bending, repetitive lifting, repetitive pulling, repetitive pushing, repetitive use of her hands" and the ability "to lift up to about 50 pounds."

### 2. *Shirvanyan's carpal tunnel syndrome and resulting difficulties at work*

In 2014, Shirvanyan was diagnosed with nerve damage and carpal tunnel in her arm and wrist. She began wearing a brace daily and needed help in the kitchen because of her injuries. Also in 2014, Shirvanyan reduced her hours due to pain. In May 2015, Shirvanyan consulted her primary care physician, Dr. Armine Nazaryan, about the pain in her wrist. Dr. Nazaryan diagnosed her with "moderate to severe right carpal tunnel syndrome" of the "right upper extremity" with "pain, numbness and weakness in her right hand." It is undisputed that carpal tunnel syndrome is a recognized disability under FEHA. Dr. Nazaryan prescribed wrist support and physical therapy.

6

Shirvanyan told her supervisors about her carpal tunnel syndrome and wrist pain. She frequently asked coworkers for help with more strenuous tasks, such as lifting heavy pots or moving large bags of fruit. Her coworkers were sometimes able to assist her. Shirvanyan also began participating in physical therapy, which somewhat improved her condition. Nevertheless, Shirvanyan was often in tears by the end of her shift due to the pain, complained of pain daily to her coworkers, and winced or favored one arm while completing her job duties.

Although not identifying them as such, Shirvanyan requested various accommodations for her wrist conditions at various times. She repeatedly asked her supervisors for additional help in the kitchen, which she did not receive. She requested an electric can opener, but she was denied that request. When the large industrial dishwasher broke, she asked for assistance hand washing dishes, or to be allowed to use paper plates, and was again denied. Shirvanyan also asked her supervisor whether she could help teachers supervise children instead of working in the kitchen, and was informed that she did not have the required skills for such work.

Testimony of the District's employees at trial reflected their lack of understanding of both the District's policies regarding reasonable accommodation and the obligations FEHA imposes on an employer, once the employer becomes aware of an employee's disability. Although Shirvanyan's supervisors were aware of Shirvanyan's carpal tunnel syndrome and her difficulties performing her job, they never discussed changing Shirvanyan's kitchen duties or giving Shirvanyan time off to address the injury in her wrist.

### 3. *Shirvanyan's shoulder injury and cessation of work at the center*

On December 18, 2015, Shirvanyan injured herself when opening the door of a heavy industrial dishwasher and left her shift early due to the resulting pain. She saw Dr. Nazaryan, complaining of pain that prevented Shirvanyan from moving her right arm, shoulder, and neck. Based on this appointment, Dr. Nazaryan provided Shirvanyan with a medical release form stating that Shirvanyan could not return to work until March 7, 2016. Dr. Nazaryan chose this length of time based on her "experience [that] this is the average time needed at least for even partial recovery of nerve injury or nerve problem." Dr. Nazaryan wrote no further medical release notes for Shirvanyan.

In early January 2016, Shirvanyan's daughter delivered the medical release form to the center, dropping it off at the sheriff's station as instructed by the center's staff. Shirvanyan's supervisor received the form. Shirvanyan never returned to work after leaving the day of her shoulder injury, nor did she provide any additional medical leave forms or requests to the center extending the length of her desired leave beyond March 7, 2016.

Resolving all conflicts in the evidence in Shirvanyan's favor, no one at the center contacted Shirvanyan or her daughter (who often served as a translator for Shirvanyan in communications with the center) about whether, when, or under what conditions Shirvanyan would be returning to work after her shoulder injury.[3] There is no information in the record

---

[3] The District offered testimony from one of its employees that he had reached out to Shirvanyan's daughter following

suggesting that Shirvanyan was fired, or that anyone at the center instructed or encouraged her not to return to work following her shoulder injury.[4]  According to her daughter, however, Shirvanyan also never mentioned returning to work at the center after leaving in December 2015.  The center's interrogatory responses indicate that Shirvanyan stopped being employed at the center "approximately at the end of 2015," which is consistent with the last time she performed work there, but the response does not indicate why her employment ended.

Shirvanyan's shoulder injury to let her know the center would hold Shirvanyan's job open for her while she recovered, and that Shirvanyan's daughter indicated Shirvanyan did not intend to return to work.  Shirvanyan's daughter, however, testified that no one from the District contacted her following the shoulder injury, and Shirvanyan likewise testified to never having heard from her employer after she left work early on December 18, 2015.  Because we resolve all conflicts in the evidence in Shirvanyan's favor, for purposes of this appeal, we must and do accept Shirvanyan's version of these facts.  (See *Crawford v. Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [in reviewing for substantial evidence, "[w]hen two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court"].)

[4] Approximately four months *before* Shirvanyan's shoulder injury and resulting cessation of work, Shirvanyan's former supervisor—who had recently retired—saw Shirvanyan in the hallway, and when Shirvanyan complained of pain, the former supervisor stated she was herself retired and stated "you could retire, too."  Shirvanyan does not argue, nor would the record support, that she understood this comment from a former supervisor four months before she hurt her shoulder and left work as an instruction not to return to work following the expiration of her medical leave note in March 2016.

#### 4.    *Shirvanyan's condition following her cessation of work at the center*

Both parties acknowledge in their respective briefing on appeal that Shirvanyan made a workers' compensation claim following her December 2015 shoulder injury, although no evidence regarding the claim was permitted at trial, and thus no details about the claim are included in the record.  In connection with this claim, Shirvanyan began seeing physician Dr. Emmett Berg on January 14, 2016.  Dr. Berg initially diagnosed Shirvanyan with severe carpal tunnel syndrome of the right extremity, cervical sprain, epicondylitis of the right elbow, and shoulder tendinitis in the right shoulder.  Based on additional diagnostics thereafter, Dr. Berg supplemented his diagnosis to include "severe pathology in the shoulder . . . including findings of a completely torn [right] supraspinatus tendon, which is one of the four rotator cuff muscles in the shoulder," as well as "multilevel degenerative disc disease of the cervical spine."  The "major complaint for which [Dr. Berg] was seeing Shirvanyan" was the torn rotator cuff in her shoulder.

Dr. Berg's treatment of Shirvanyan was still ongoing at the time of trial in 2018.  At that time, Dr. Berg was still instructing Shirvanyan not to return to work.  Nothing in the record suggests that Berg provided Shirvanyan with a medical leave note or that Dr. Berg or Shirvanyan otherwise communicated Dr. Berg's instructions to the center.  Also as of the time of trial, Shirvanyan still had significantly limited mobility in her right arm/hand, and used her left hand to brush her teeth, shower and to put on shoes.

Shirvanyan's daughter testified to the differences in her mother's emotional state following her cessation of work at the center.  Specifically, her daughter noted that "[b]efore when

[Shirvanyan] would work [at the center], even though she was in a lot of pain, she was happy. She would go to work, but now she is just really sad, depressed. She feels like she wasn't treated fairly, and so that's all causing her emotional and mental—like, she is just hurt from all of that."

Dr. Anthony Reading, a psychological expert, opined based on his review of Shirvanyan's medical records and an extended face-to-face interview of Shirvanyan in October 2018, that she suffered from moderate to severe major depressive disorder. Dr. Reading explained that Shirvanyan's "perception that the college wasn't helping her" had "an aggravating impact" on her pain, and that her work at the center had given her a sense of self-worth which had helped offset her pain. Dr. Reading further opined that, if Shirvanyan had been "helped by the college, that would [have been] a positive and the removal of a negative. And even if she stopped working, there wouldn't [have been] the sense of feeling injured arising from the . . . college's failure. So that would alter her mental landscape in a very significant way." "[T]he fact that . . . Shirvanyan thought that [her] [shoulder] injury was avoidable" "increase[d] the severity of her depression and her pain. The sense that something is avoidable . . . is an aggravating factor." When asked his opinion as to whether Shirvanyan's perception of being treated unfairly and "experiences at her work at the college led to any sort of depressive disorder," he explained: "[I]t's an unfortunate confluence of events, that she developed pain while working and claimed to have reported that, requested assistance. None was forthcoming, according to . . . Shirvanyan. And over time, her pain became more pronounced, ultimately leading to her being taken off work and not returning. And she maintained that

11

once she lost her job, her depression set in and her pain become worse."

Dr. Reading further testified that, in terms of a prognosis, "with aggressive treatment, the best I think there can be hope for at this point is a partial remission" meaning "she'll be encumbered with at least a partial depression for the rest of her life."

## C.     *Procedural Background*

### 1.     *Shirvanyan's complaint*

Shirvanyan sued the District, alleging three causes of action under FEHA:  (1) disability discrimination; (2) failure to engage in the interactive process; and (3) failure to provide a reasonable accommodation.  Shirvanyan's theory of the case was that, as a result of these violations, she developed major depressive disorder, resulting in both emotional distress and economic loss in the form of lost wages beginning April 1, 2016. The case ultimately proceeded to a jury trial.

### 2.     *Shirvanyan's motion in limine regarding workers' compensation evidence*

At trial, Shirvanyan clarified that she was not seeking any damages for *physical* pain or medical bills from on-the-job injuries.  Rather, her theory was that the center's failure to treat her in the manner FEHA requires—*not* her injuries or her cessation of work—caused her depression.  Shirvanyan moved to preclude any evidence of her receipt of workers' compensation benefits based on Shirvanyan's shoulder injury, as well as any reference to her workers' compensation lawsuit.  The court granted the motion, deeming such evidence to be unduly prejudicial and without probative value.  Shirvanyan proceeded

12

to trial claiming only emotional distress damages and lost wages due to her emotional distress/depression.

### 3. *Motion for nonsuit and jury instructions regarding availability of reasonable accommodation*

At the close of Shirvanyan's case-in-chief, the District moved for nonsuit, arguing that Shirvanyan failed to prove a key element of her claims—that there was an available and effective reasonable accommodation that could have been made at the times Shirvanyan alleged the District failed to engage in the interactive process. The court rejected the District's motion, based on its view that the availability of a reasonable accommodation is not an element of an interactive process claim.

Based on this same logic, the trial court rejected the following special instruction proffered by the District on this point: "Reasonable Accommodation Available. [¶] To prove her claim that [the] District failed to engage in the interactive process, [p]laintiff must identify a reasonable accommodation that would have been available at the time the interactive process should have started." The trial court reasoned that it did not matter whether a reasonable accommodation "was available at the time of the interactive process, because there was no interactive process," and so it "cannot be known whether an alternative job would have been found."

The trial court instead instructed the jury using the jointly proposed instruction CACI No. 2546, which does not expressly require the jury to find that a reasonable accommodation was available. Rather, it required Shirvanyan prove: (1) "[t]hat . . . Shirvanyan had a physical disability that was known to [the] District"; (2) "[t]hat . . . Shirvanyan requested that [the]

13

District make [a] reasonable accommodation for her physical disability so that she would be able to perform essential job requirements"; (3) "[t]hat . . . Shirvanyan was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that she would be able to perform the essential job requirements"; (4) "[t]hat [the] District failed to participate in a timely good-faith interactive process with . . . Shirvanyan to determine whether reasonable accommodation could be made"; (5) "[t]hat . . . Shirvanyan was harmed"; and (6) "[t]hat [the] District's failure to engage in a good-faith interactive process was a substantial factor in causing . . . Shirvanyan's harm."

The jury was also instructed on the elements of Shirvanyan's reasonable accommodation claim using the jointly proposed instruction CACI No. 2541, which listed the following elements: (1) "[t]hat . . . Shirvanyan had a physical disability"; (2) "[t]hat [the] District knew of . . . Shirvanyan's physical disability"; (3) "[t]hat . . . Shirvanyan was able to perform the essential job duties with reasonable accommodation for her physical disability"; (4) "[t]hat [the] District failed to provide reasonable accommodation for . . . Shirvanyan's physical disability"; (5) "[t]hat . . . Shirvanyan was harmed"; and (6) "[t]hat [the] District's failure to provide [a] reasonable accommodation was a substantial factor in causing . . . Shirvanyan's harm."

14

### 4.    *The jury verdict*

In the agreed-upon general verdict form, the jury rejected Shirvanyan's disability discrimination claim but found in her favor on her reasonable accommodation and interactive process claims.  The jury awarded $124,670 in past and future economic damages and $2,775,000 in noneconomic damages (comprised of $1,400,000 for past noneconomic damages and $1,375,000 for future noneconomic damages), for a total of $2,899,670.  The economic damages figures are consistent with the testimony of Shirvanyan's economic damages expert, who used a time frame from April 1, 2016 to December 3, 2018, the date of Shirvanyan's likely retirement, and assumed Shirvanyan would be permanently unable to work.

### 5.    *The district's motion for judgment notwithstanding the verdict or new trial*

The District moved for a judgment notwithstanding the verdict on several grounds, two of which form the basis for the District's arguments in the instant appeal.[5]  First, the District argued that the evidence presented did not support the availability of a reasonable accommodation during the relevant time frame.  The trial court rejected this argument, based on its view that the availability of a reasonable accommodation is not an element of an interactive process claim.  Second, the District

---

[5] The District's motion also raised arguments that there was insufficient evidence to support that Shirvanyan's claimed injuries resulted from the FEHA violations, as opposed to Shirvanyan's cessation of work, and that the amount of emotional distress damages were excessive and unsupported by the evidence.  The court likewise rejected these arguments.

15

argued Shirvanyan's claimed damages arose from injuries at work, and were thus recoverable exclusively through the workers' compensation law, given that law's exclusivity provisions. (Lab. Code, § 3600, subd. (a) ["[l]iability for the compensation provided by this division" is "in lieu of any other liability whatsoever to any person"].) The court concluded that Shirvanyan had presented sufficient evidence that her damages arose not from her physical injuries, but from the District's failure to engage in the interactive process and failure to provide a reasonable accommodation. The court denied the motion, and judgment was entered on January 25, 2019.

The District appealed from the judgment and, separately, from a postjudgment order awarding Shirvanyan $503,273.50 in attorney fees pursuant to section 12965, subdivision (b). We consolidated the two appeals for all purposes.

## DISCUSSION

### A.     *Arguments Related to the Availability of a Reasonable Accommodation*

On appeal, the District argues that the availability of a reasonable accommodation is an essential element of an interactive process claim, that the trial court committed reversible error in denying a jury instruction to this effect, and that the evidence does not support a finding that a reasonable accommodation was available. For reasons we discuss below, we agree with the District as to the law and agree in part as to the sufficiency of the evidence.

16

### 1. *Availability of a reasonable accommodation is an element of an interactive process claim*

Well-reasoned precedent supports the District's argument that, in order to succeed on a cause of action for failure to engage in an interactive process, "an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1018 (*Scotch*); *Nadaf-Rahrov, supra,* 166 Cal.App.4th at p. 981 ["section 12940[, subdivision] (n) imposes liability only if a reasonable accommodation was possible"].)

Shirvanyan argues that "authority is split" on this point, relying primarily on *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413 (*Wysinger*), and *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, as well as the CACI No. 2546 use instructions that these cases create such a split.

But these cases can be "synthesize[d]" with cases requiring an available accommodation to support liability, as set forth in the thorough discussion of this issue in *Scotch, supra,* 173 Cal.App.4th at p. 1018. In *Scotch*, the Fourth Appellate District explained that "[a]n employee cannot necessarily be expected to identify and request all possible accommodations during the interactive process itself because ' " '[e]mployees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have. . . .' " ' (*Wysinger, supra,* 157 Cal.App.4th at p. 425.) However, . . . once the parties have engaged in the litigation process, to prevail, the employee must be able to identify an available accommodation the interactive process

17

should have produced: 'Section 12940[, subdivision ](n), which requires proof of failure to engage in the interactive process, is the appropriate cause of action where the employee is unable to identify a specific, available reasonable accommodation while in the workplace and the employer fails to engage in a good faith interactive process to help identify one, but the employee is able to identify a specific, available reasonable accommodation through the litigation process.' (*Nadaf–Rahrov, supra,* 166 Cal.App.4th at p. 984.)"[6] (*Scotch, supra,* 173 Cal.App.4th at pp. 1018–1019.)

In arguing to the contrary, Shirvanyan also makes a statutory interpretation argument that interpreting section 12940, subdivision (n) (deeming a failure to engage in the interactive process unlawful) as requiring an available reasonable accommodation renders subdivision (m) (deeming a failure to provide a reasonable accommodation unlawful) superfluous. This does not logically follow, however, as an employer might engage in the interactive process and still refuse to offer a reasonable accommodation.

Moreover, even assuming that this language in section 12940 defines as an unlawful employment practice an employer's failure to engage in an interactive process with

---

[6] To the extent it reaches a contrary conclusion, we disagree with *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 360–362, as did the court in *Nadaf-Rahrov.* (See *Nadaf-Rahrov, supra,* 166 Cal.App.4th at p. 972 ["We disagree with *Bagatti* because it fails to fully grapple with the meaning of 'reasonable accommodation' in section 12940[, subdivision] (m)."].)

18

an employee for whom no reasonable accommodation existed, this would not mean that the employee has a cognizable FEHA cause of action. Under such circumstances, had the employer engaged in an interactive process, that process could not have benefited the employee. (See *Scotch, supra*, 173 Cal.App.4th at p. 1019 ["Put another way, if this case were presented to a jury, what remedy could it provide? How was [the plaintiff employee] damaged by any failure by [his employer] to engage in the interactive process in good faith? The FEHA has a remedial rather than punitive purpose."].) A necessary corollary to this is that the failure to engage in such process could not have negatively impacted her ability to work. Permitting a FEHA cause of action on such facts thus would allow recovery for harm resulting solely from an employee's *perception* that she was not permitted a fair chance to perform her job—as opposed to her actually having been denied such a fair chance. Only recovery based on the latter is consistent with FEHA's goal of "protect[ing] and safeguard[ing] the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical disability [or] mental disability." (§ 12920; see *Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 430 [same]; *Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 637 [in amending FEHA, "the Legislature made note of the important public goal that, by providing reasonable accommodations for disabled employees, employers were helping to strengthen our economy by keeping people working who would otherwise require public assistance"].) Indeed, such a result would serve no purpose at all, let alone the anti-discrimination purpose of FEHA.

19

The District also argues the trial court erred in not giving an instruction on this point. We need not decide whether this failure was error or prejudicial, however, as we reverse on other grounds set forth below.

### 2. *Substantial evidence supports that a reasonable accommodation was available to accommodate only Shirvanyan's wrist injury*

We next consider the District's arguments that there is insufficient evidence to support a finding that a reasonable accommodation was available at the time the District should have engaged in the interactive process with Shirvanyan. When reviewing the sufficiency of the evidence on appeal, " 'all conflicts must be resolved in favor of the [prevailing party], and all legitimate and reasonable inferences indulged in to uphold the [finding] if possible. . . . [T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the [finding]. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the [trier of fact].' " (*Western States Petroleum, supra,* 9 Cal.4th at p. 571.) "Substantial evidence" is evidence "of ponderable legal significance[,] . . . reasonable in nature, credible, and of solid value." (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644.)

Shirvanyan's theory at trial and on appeal is that three types of reasonable accommodation of Shirvanyan's disability were available: "restructuring" her position, "preferential reassignment" to another position, and a finite leave of absence. Shirvanyan presented evidence regarding her requests for

20

accommodation of her wrist condition and her subsequent request for accommodation of her shoulder injury.  Shirvanyan argues the center failed to engage in an interactive process in response to any of these requests.  We address the evidence regarding the availability of an accommodation for each of her two injuries in turn below.

a.  *Availability of reasonable accommodation for Shirvanyan's wrist injury*

We conclude that, viewing the record in the light most favorable to Shirvanyan, substantial evidence supports that finite medical leave was an available reasonable accommodation for Shirvanyan's carpal tunnel/wrist injury at the time she requested such accommodation.  As the jury was instructed, a finite period of leave constitutes a reasonable accommodation, "provided it is likely that at the end of the leave, the employee would be able to perform his or her duties" (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226), and that the leave does not cause the employer undue hardship.  (§ 12940, subd. (m)(1).)  Dr. Berg testified that temporarily stopping the repetitive actions that cause a cumulative trauma injury like carpal tunnel syndrome, at least early on, can eliminate the pain of such injury, allowing the patient to engage in rehabilitation therapy exercises and "sometimes . . . restore proper motion to the joint strength and get back to the activity they were doing in the first place." Dr. Nazaryan estimated that approximately two months "is the average time needed at least for even partial recovery of nerve injury or nerve problem[s].  During that period of time, [the] patient is supposed to get rest, treatment, appropriate medications, physical therapy, in this particular case, until she's getting better and she's able to go back to her customary work."

21

Before additional diagnostics revealed that Shirvanyan suffered from a torn rotator cuff in addition to nerve-related injuries, Dr. Nazaryan anticipated this was the length of time Shirvanyan would need to recover from those nerve injuries and be able to return to work.  From this, the jury could have reasonably inferred that, before Shirvanyan injured her shoulder in December 2015, a finite leave of absence of this length (or less) could have permitted Shirvanyan's wrist to recover to such an extent that Shirvanyan could "go back to her customary work."

### b.  *Reasonable accommodation of Shirvanyan's shoulder injury*

No evidence suggests a finite leave would have been a reasonable accommodation for Shirvanyan's shoulder injury, however.  When Dr. Nazaryan initially wrote Shirvanyan's medical leave note suggesting Shirvanyan could return to work in a matter of months, Dr. Nazaryan was unaware of the extent of Shirvanyan's shoulder injury.  Dr. Berg later concluded, based on additional diagnostics, that this injury still prevented Shirvanyan from returning to work at the time of trial, over two years later.  Neither Dr. Berg nor any other witness offered any specific time by which Shirvanyan's shoulder injury would no longer prevent her from returning to her work at the center.  Thus, the evidence does not support that a "finite" term of leave was an available accommodation.  Nor could medical leave of many years be a reasonable accommodation, as it "would produce undue hardship to the employer's operation."  (*Nealy, supra,* 234 Cal.App.4th at p. 373; § 12940, subd. (m)(1).)

A restructuring of job duties may constitute a reasonable accommodation if it " 'enables the employee to perform the essential functions of the job.' "  (*Scotch, supra*, 173 Cal.App.4th

22

at p. 1010, quoting *Nadaf-Rahrov, supra,* 166 Cal.App.4th at p. 974.) Shirvanyan's essential job functions, as defined by her complaint, included "repetitive use of her hands to cut foods, load and unload the dishwasher, and hand wash large and heavy pots and pans." The complaint's allegations are " 'a judicial admission' " that concede " 'the truth of [the] matter' " and have " 'the effect of removing it from the issues.' " (*Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1324; *Uhrich v. State Farm Fire & Casualty Co.* (2003) 109 Cal.App.4th 598, 613 ["a judicial admission cannot be rebutted: [i]t estops the maker"]; *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 871 [judicial admissions in a complaint overcome evidence even if the opposing party seeks to contradict the prior admission].)

Uncontradicted testimony of Shirvanyan's own physician similarly characterized Shirvanyan's essential job functions as including the ability "to lift up to about 50 pounds," as well as "prolonged standing, repetitive bending, repetitive lifting, repetitive pulling, repetitive pushing, [and] repetitive use of her hands." It is not in dispute that, years after Shirvanyan's shoulder injury, she was still unable to lift her right arm. Shirvanyan thus could not have engaged in many of the essential job duties both she herself and her physician identified. As such, restructuring Shirvanyan's duties as a kitchen assistant was not a reasonable accommodation that was available for Shirvanyan's shoulder injury. (See *Nadaf-Rahrov, supra*, 166 Cal.App.4th at p. 974.)

As to the possibility of Shirvanyan being reassigned, she failed to offer any evidence that any position, the essential functions of which she could perform (with or without accommodation), was vacant at the relevant time. FEHA "does

23

not require reassignment if there is no vacant position the employee is qualified to fill." (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 721.)  Shirvanyan appears to suggest that other unclassified assistant level job assignments were vacant in the sense that, the job assignments and duties of employees at the unclassified level could be and often were rotated.  She points in particular to testimony that her former director could have transferred Shirvanyan to other unclassified positions.  Rotating the duties of other unclassified employees in the manner Shirvanyan posits—that is, letting Shirvanyan take over other employees' duties that Shirvanyan was capable of performing, and requiring those other employees to take over Shirvanyan's previous duties in the kitchen instead—would necessarily involve redefining another employee's job duties, potentially in a very significant way.  But FEHA does not require this, as "[t]he responsibility to reassign a disabled employee who cannot be otherwise accommodated does 'not require . . . moving another employee.' " (*Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1389.)  We thus need not reach the issue, extensively briefed by the parties, as to whether the evidence supports that Shirvanyan could perform and/or was qualified to perform the essential job functions of other assistant level positions at the center.

For these reasons, the record does not contain substantial evidence that there was an available reasonable accommodation for Shirvanyan's shoulder injury.  There is thus insufficient evidence to support the jury's verdict in Shirvanyan's favor on her reasonable accommodation and interactive process claims, to the extent that these claims rely on a failure to accommodate or

24

engage in the interactive process regarding Shirvanyan's shoulder injury.

**B.**     *Sufficiency of the Evidence to Support a Failure to Accommodate Shirvanyan's Shoulder Injury*

The evidence is insufficient to support Shirvanyan's interactive process and reasonable accommodation claims to the extent they are based on the District's handling of Shirvanyan's shoulder injury for the *additional* reason that the evidence does not reflect any failure to provide reasonable accommodation of that injury. This is because nothing in the record supports that Shirvanyan stopped working as a result of any action by the District. Rather, even viewing the evidence in the light most favorable to Shirvanyan, it establishes that, following Shirvanyan's shoulder injury, Shirvanyan indicated to the District that she would not be able to return to work until March 2016, that the District did not respond positively or negatively, and that Shirvanyan did not return to work at any time thereafter. Nothing in the record suggests the District denied Shirvanyan the leave she requested by providing Dr. Nazaryan's medical release form indicating Shirvanyan would need to be off work until March 2016. Nothing in the record suggests the District fired Shirvanyan or told her not to return to work after her shoulder healed. And Shirvanyan does not argue that she quit because of the District's failure to accommodate any of her injuries—to the contrary, on appeal, she denies that she quit. The only evidence in the record bearing on why Shirvanyan did not return to work is testimony from Dr. Berg that he continued to view her shoulder injury as preventing such a return to work in late 2018. Thus, nothing

25

suggests that, when Shirvanyan requested an accommodation for her shoulder injury—namely, medical leave until March 2016—the District refused. As a result, the evidence also does not support that the District had occasion to engage in the interactive process with Shirvanyan regarding her shoulder (given that nothing in the record suggests the District had denied her request for a reasonable accommodation in the form of temporary medical leave). On this basis as well, the evidence does not support Shirvanyan's interactive process and reasonable accommodation claims to the extent they stem from the District's handling of Shirvanyan's shoulder injury.

### C. *Retrial Is Necessary to Determine Whether the District's Response to Shirvanyan's Wrist Injury Supports a Failure to Accommodate and/or Reasonable Accommodation Claim*

For the reasons discussed above, sufficient evidence does not support the jury's verdict on her failure to accommodate and interactive process claims to the extent those claims involve the District's response to her shoulder injury. But it does not necessarily follow that the jury's verdict entitles Shirvanyan to recover based on the District's response to her wrist injury. Shirvanyan offered evidence regarding the District's response to both injuries, and the verdict form did not require the jury to indicate the factual basis for its verdict. Responding to either injury in a manner that violates FEHA would have been sufficient to support a verdict in Shirvanyan's favor. Thus, although the jury's verdict in Shirvanyan's favor on these claims certainly *could* have been based on the jury concluding that *both* the District's handling of Shirvanyan's wrist injury and its handling of her shoulder injury violated FEHA, it likewise could

26

have been based on a conclusion that the District's response to just *one* of these two injuries violated FEHA. The record does not provide any basis on which to determine which is the case. Thus, our conclusion that Shirvanyan should not recover based on the District's response to her shoulder injury requires a retrial to allow the jury to determine whether the District's response to her wrist injury, standing alone, constituted a failure to accommodate and/or failure to engage in the interactive process in violation of FEHA and, if so, what damages, if any, Shirvanyan suffered as a result. (See *Woodcock v. Fontana Scaffolding & Equipment Co.* (1968) 69 Cal.2d 452, 457 (*Woodcock*) ["[i]f the verdict is hopelessly ambiguous, a reversal [and retrial] is required"].)

We disagree with Shirvanyan that such retrial should be limited to the issue of damages. Appellate courts certainly may, under appropriate circumstances, order such a limited issue retrial. (*Woodcock, supra,* 69 Cal.2d at p. 457 [retrial following ambiguous verdict "may be limited to the issue of damages"]; *Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 776 [" 'appellate courts have power to order a retrial on a limited issue, if that issue can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial' "].) But doing so here would require us to assume the jury found (or would find) liability based solely on the District's response to Shirvanyan's wrist injury, which, given the manner in which Shirvanyan chose to try her case, we cannot do. A new trial limited to damages " 'should be granted . . . only if it is clear that no injustice will result' " and " 'should be considered with the utmost caution,' " with " 'any doubts' " resolved " 'in favor of granting a complete new trial.' " (*Liodas v. Sahadi* (1977) 19

27

Cal.3d 278, 285–286.) A full retrial of Shirvanyan's reasonable accommodation and interactive process claims based on the District's response to her wrist injury is thus appropriate.

## D. *Such Limited Retrial Would Not Be Futile*

The District argues that any retrial—whether or not limited to damages—would be futile, because the evidence presented could not support a finding of damages from the District's response to Shirvanyan's wrist injuries in any event. We disagree.

It is certainly true that the vast majority of the damages evidence Shirvanyan presented at trial involved how the District's response to her shoulder injury affected Shirvanyan. Shirvanyan's damages expert calculated economic damages (specifically, lost wages as a result of her depression) from April 2016, several months after Shirvanyan had stopped working due to her shoulder injury. Shirvanyan concedes that these economic damages are not recoverable if liability is based solely on FEHA violations involving her wrist injury.

The bulk of the noneconomic damages evidence involved Shirvanyan's depression, which all evidence suggests began only after she stopped working at the center following her shoulder injury. Shirvanyan does not argue that the District's handling of her wrist injury directly or indirectly caused this depression. Nor could she. Shirvanyan has disavowed (as she must on the evidence presented) any claim that the District's handling of her wrist condition caused the shoulder injury that rendered her unable to work—indeed, according to Shirvanyan, she is "not attempting to prove the medical cause of any physical injury." And Dr. Reading's testimony does not provide a link between the District's handling of Shirvanyan's wrist injury and

28

Shirvanyan's depression in the way his testimony linked the District's handling of her shoulder injury and her depression. Specifically, Dr. Reading opined that "adverse events stemming from the action or inaction of others" lead to a "potential for injury [that] is greater both in severity and duration," and that Shirvanyan's perception that her shoulder injury and resulting inability to work was "avoidable" was "an aggravating factor" that "increase[d] the severity of her depression and her pain," transforming distress from her inability to work into a debilitating life-long depressive disorder. The same logic does not apply to the District's handling of her wrist injury. The evidence regarding Shirvanyan's major depressive disorder thus could not support a finding of damages from the District's response to Shirvanyan's wrist injury, as Shirvanyan's counsel acknowledged at the hearing before this court.

But the record *does* contain some evidence from which the jury could conclude on retrial that the District's response to Shirvanyan's wrist injury caused Shirvanyan noneconomic harm—namely, emotional distress. Emotional distress damages may compensate a plaintiff " 'for . . . grief, anxiety, worry, mortification . . . humiliation, [or] indignity,' " and a plaintiff may prove such experiences solely through her own testimony. (*Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 401.) Shirvanyan testified she experienced such feelings when the District's employees denied her requests for accommodations of her wrist condition. Specifically, Shirvanyan testified to being upset and crying in response to comments her former supervisor made when Shirvanyan complained of pain from her wrist condition in 2015, to being upset when her supervisor refused Shirvanyan's repeated requests for accommodation of her wrist

condition, and that she worried she would never get better because they refused to assist. There is no fixed standard for the evidence needed to support a finding of emotional distress damages. (See *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 953 ["[I]t is the members of the jury who, when properly instructed, are in the best position to assess the degree of the harm suffered and to fix a monetary amount as just compensation therefor."].) It is thus possible Shirvanyan's testimony could provide a sufficient basis for a jury to calculate a damages award, should they conclude that the District is liable based on its handling of Shirvanyan's wrist injury. (See *Rony v. Costa* (2012) 210 Cal.App.4th 746, 756 [a jury evaluating "hard-to-quantify injuries, such as emotional and reputational ones . . . [is] free to place any dollar amount" on the harm so long as the award does not shock the moral sense and is not influenced by passion or prejudice].) The limited retrial of Shirvanyan's reasonable accommodation and interactive process claims we describe above thus would not be futile.

In sum, substantial evidence does not support the jury's verdict on Shirvanyan's failure to accommodate and interactive process FEHA claims to the extent they are based on the District's handling of Shirvanyan's shoulder injury. Because the verdict is ambiguous as to whether the jury found for Shirvanyan based in any part on the District's response to her wrist injury, we reverse the judgment and remand for a retrial only on Shirvanyan's reasonable accommodation and interactive process claims, and solely to the extent those claims seek recovery for the District's response to Shirvanyan's wrist injury.

## E.    *The Workers' Compensation Act Does Not Bar the Portion of Shirvanyan's FEHA Claims to Be Retried*

The District argued in its initial briefing that the WCA (Lab. Code, § 3200 et seq.) bars recovery for Shirvanyan's depressive disorder, because that disorder is derivative of Shirvanyan's shoulder injury, a harm compensable only under the WCA.  As noted, nothing in the evidence connects the District's handling of her wrist injury to Shirvanyan's depression, and Shirvanyan has acknowledged that no such connection exists.  The District's WCA exclusivity arguments regarding Shirvanyan's depressive disorder are therefore moot.  To assist the court on retrial, however, we briefly address whether WCA exclusivity bars the limited version of Shirvanyan's claims to be retried.  We conclude that it does not.

The WCA provides the exclusive remedy for an injury sustained by an employee in the course and scope of employment. (Lab. Code, §§ 3600, subd. (a), 3602, subd. (a); *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 813 (*Vacanti*).)  The workers' compensation exclusivity rule is based on the "presumed 'compensation bargain' " in which, in exchange for limitations on the amount of liability, the employer assumes liability regardless of fault for injury arising out of and in the course of employment.  (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16.)  The compensation bargain encompasses both psychological and physical injury arising out of and in the course of the employment.  (Lab. Code, §§ 3600, subd. (a), 3208.3.)

The compensation bargain—and thus workers' compensation exclusivity—also encompasses injury "collateral to or derivative of a compensable workplace injury" (*Vacanti, supra,* 24 Cal.4th at pp. 814), such as emotional distress

31

stemming from the experience of a physical injury at work. (See *id.* at pp. 814–815; *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 902; *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160.) This serves the goal of providing a "single recovery of benefits on account of a single injury or disability." (*Sea-Land Service, Inc. v. Workers' Comp. Appeals Bd.* (1996) 14 Cal.4th 76, 82.)

Shirvanyan's reasonable accommodation and interactive process claims based on the District's handling of her wrist condition *involve* an injury that might fall within the compensation bargain (her carpal tunnel syndrome), but the harm for which she seeks to recover is not "derivative of" or "on account of" that injury. Shirvanyan does not claim she suffered emotional distress because her wrist was injured, or because her wrist injury was painful, or because her wrist injury prevented her from working. Rather, she claims she suffered emotional distress because the District repeatedly denied her the reasonable accommodations to which FEHA entitled her and failed to engage in the process FEHA requires for identifying such accommodations. Her FEHA causes of action seeking compensation for such distress thus do not seek to recover on account of her wrist injury and disability, but rather on account of the way the District treated her because of those limitations. This is a separate harm and not derivative of anything falling within the compensation bargain.

The general rule of workers' compensation exclusivity "applies only if the risks resulting in the injury were encompassed within the 'compensation bargain' [citation] . . . [which] does not encompass conduct that contravenes a fundamental public policy or exceeds the risks inherent in the

32

employment relationship." (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 366; accord, *Vacanti, supra,* 24 Cal.4th at pp. 811–812.) Thus, "some claims, including those based on . . . discrimination or other conduct contrary to fundamental public policy, are not subject to the exclusivity provisions of the workers' compensation law. [Citation.] Thus, such claims may be the subject of both workers' compensation proceedings and civil actions." (*Claxton v. Waters* (2004) 34 Cal.4th 367, 373, citing *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1155 (*Moorpark*).)

A failure to provide reasonable accommodations to a disabled employee in violation of FEHA, or to engage in the statutorily required steps to identify such accommodation, violates the fundamental public policy underlying all of FEHA: "to promote equal employment opportunity." (Cal. Code Regs., tit. 2, § 11006; see Gov. Code, § 12920.) For these reasons as well, Shirvanyan's FEHA claims based on the District's handling of her wrist injury are not barred by WCA exclusivity.

Our conclusion in this regard is consistent with the California Supreme Court's conclusion in *Moorpark* that FEHA discrimination claims under Labor Code section 132a are not barred by the WCA exclusivity rule. The Court in *Moorpark* relied in part on the statutory language of Labor Code section 132a, which is applicable only to discrimination claims. But the Court further concluded that disability discrimination "falls outside the compensation bargain, and workers' compensation is not the exclusive remedy" based on the broader goals and generally applicable provisions of FEHA as well. (*Moorpark, supra,* 18 Cal.4th at p. 1155; *id.* at p. 1156 ["[t]he provisions of the FEHA, and our decisions interpreting it, further

33

support our conclusion that section 132a is not exclusive"]; see also *id.* at pp. 1156–1158.) The Court's discussion in this regard equally supports the conclusion that non-discrimination FEHA causes of action are outside the compensation bargain (accord, *Bagatti v. Department of Rehabilitation, supra*, 97 Cal.App.4th at p. 366 [applying reasoning of *Moorpark* to conclude workers' compensation exclusivity did not bar reasonable accommodation claim]), particularly given the Legislature's decision to place disability discrimination, failure to provide reasonable accommodations, and failure to engage in the interactive process on equal footing as unlawful employment practices under section 12940. (See § 12940, subds. (a), (c), (m)(1) & (n); see also § 12920 ["It is the purpose of this part [which includes sections 12940, subdivisions (m)(1) and (n)] to provide effective remedies that will eliminate these discriminatory [employment] practices."].) The WCA thus does not bar Shirvanyan's wrist-related reasonable accommodation and interactive process claims.

## F. *Attorney Fees Appeal*

Because we reverse the judgment in Shirvanyan's favor, it necessarily follows that she is not presently entitled to any award of attorney fees. The trial court's attorney fees order is therefore reversed. (*Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 402 [an order awarding attorney fees "falls with a reversal of the judgment on which it is based"].) Should Shirvanyan prevail on retrial, the trial court will need to reassess the appropriate amount of attorney fees, taking into consideration the outcome of this appeal. (See *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989–990 [degree of success a factor in fee calculation].)

34

## DISPOSITION

The judgment of the court is reversed.  Upon remand, the court is instructed to conduct a new trial only on Shirvanyan's reasonable accommodation and interactive process claims based on the District's response to Shirvanyan's wrist condition and carpal tunnel syndrome in 2014 and 2015.

The order awarding Shirvanyan attorney fees is reversed. The parties shall bear their own costs on appeal.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANAHIT SHIRVANYAN, | B296593, B297419 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC633224) |
| v. | |
| LOS ANGELES COMMUNITY COLLEGE DISTRICT, | CERTIFICATION AND ORDER FOR PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on November 30, 2020 was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

ROTHSCHILD, P. J.          CHANEY, J.          BENDIX, J.